IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVIE HARDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 7894 |
| | ) | Paul E. Plunkett, Senior Judge |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, UNITED STATES POSTAL | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Stevie Hardy ("Plaintiff") has sued John E. Potter, postmaster general of the United States Postal Service ("Defendant"), for his alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Hardy claims he was racially discriminated against because he is a light-skinned African American. The case is before the Court on Defendant's Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment. For the reasons stated below, Defendant's motion is granted.

## Facts

Unless otherwise noted, the following facts are undisputed. Hardy is a light skinned African-American male who has been employed with the Postal Service since 1997. He has worked the overnight shift as a custodian/laborer since July 2000. In August 2000, Harold Himes and Michael Polumbo were co-supervisors for the overnight shift employees. Himes and Polumbo divided their

-1-

supervisory responsibilities with Himes primarily supervising the custodians, labor and building equipment mechanics and Polumbo primarily supervising the mechanic and electronic technicians. Hardy primarily reported to Himes. Plaintiff nevertheless contends that Polumbo had the same power as Himes to direct his work and several other postal employees. (Def.'s Reply Pl.'s Stmt. of Facts ¶ 1.) This, it turns out, is a distinction without a difference.

Hardy's complaint is straight forward. He admits that he has had a significant number of unscheduled absences, which permit disciplinary action. However, he contends that he has been punished in ways that other Caucasian or dark-skinned African-American employees were not. When Hardy began his employment, the attendance policy required that any employee who would be late or absent from work was to call his supervisor, who would complete a form 3971 to document the reasons for absence. In 2002, the Postal Service adopted a new procedure. Under the new system, if an employee was going to be late or absent to work, he was required to call the Attendance Control Office ("ACO"). The central operator then asked the employee the reasons for his tardiness or absence; the information was input into the computer system, and the form 3971 was generated and forwarded to supervisors. Once an employee has incurred three unscheduled absences, ACO sends a notice to the supervisor to review the attendance record. Generally, any absence or tardiness that is not pre-planned is considered an unscheduled absence and can lead to discipline. However, supervisors are provided with wide discretion to further examine the circumstances surrounding each absence and may treat unscheduled absences as scheduled absences if they find the employee's reason compelling.

From December 2000 to May 2001, Hardy incurred eight unscheduled absences and, consequently, Himes issued a letter of warning to Hardy. Hardy grieved the letter and it was reduced

to a review of his attendance record. One year later under the new system, a notice was sent to Himes requesting a review Hardy's attendance record. This time, seven unscheduled absences were recorded from October 2001 to April 2002. Himes conducted a pre-disciplinary interview to understand the circumstances behind Hardy's absences. At that time, Himes determined that the appropriate action was to conduct an informal discussion instead of issuing a letter of warning. Himes, however, told Hardy that future unscheduled absences would result in a more serious level of discipline, i.e. a letter of warning. In July 2002, ACO again requested Himes to review Hardy's attendance record because three additional unscheduled absences were incurred from April 2002 to July 2002. During the interview, Himes again took no official disciplinary action. From July 2002 to December 2002, Hardy incurred six additional unscheduled absences and, consequently, on December 6 2002, Himes issued a letter of warning to Hardy. However, this official letter was rescinded by Himes in May 2003. From May 2003 to August 2003, Hardy incurred seven unscheduled absences, and Himes again issued an official letter of warning. Hardy testified that he was suspended in December 2002, August 2003 and December 2004.

Hardy first complained of discrimination to the Equal Employment Office ("EEO") counselor on December 19, 2001. On January 8, 2002, Hardy filed a formal EEO complaint alleging discrimination based on his race, color and disability. He claimed that he was disciplined for unscheduled absences and other employees were not.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

### Discussion

Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2 (1994). In a race discrimination claim, to defeat Defendant's summary judgment motion, Plaintiff must either present direct evidence of Defendant's discriminatory intent or prove intent via the burden-shifting method articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). In order to establish direct evidence, there must be a virtual admission by the decision maker that the action against the employee was predicated upon the "prohibited animus." *Haywood v. Lucent Tech., Inc.*, 169 F. Supp. 2d 890, 907 (N.D. Ill. 2001); *see also Foster v. Arthur Andersen, LLP.*, 168 F.3d 1029, 1035 (7th Cir. 1999). Absent such direct evidence or clear acknowledgment of harassment, courts will examine the claim under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973).

Under this burden shifting method, a plaintiff must first establish a prima facie case of discrimination. *Chiaramonte v. Fashion Bed Group*, 129 F. 3d 391, 396 (7th Cir. 1997) (citations omitted). To do so, a plaintiff must establish that: (1) he is a member of a protected class; (2) he

was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated individuals who are not in his protected class were treated more favorably. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885-86 (7th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 801). The ultimate burden to prove discrimination always remains with the plaintiff. *See Sattar v. Motorola*, 138 F.3d 1164, 1169 (7th Cir. 1998). If a plaintiff has successfully demonstrated these elements, a rebuttable presumption of discrimination is established. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 885–86 (7th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 801). *Id.*

The burden of production then shifts to the defendant to offer a legitimate, non-discriminatory reason for taking its challenged employment action. *Id.* If the defendant carries his burden, the plaintiff must then demonstrate that the defendant's legitimate reason was actually a guise for discrimination. *Id.* (referencing *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000)); *see Von Zuckerstein*, 984 F.2d at 1472. If the plaintiff is able to show that the defendant's explanation was pretextual, then he will have a viable claim for discrimination.

Having no direct evidence of discrimination here, if he is to defeat Defendant's motion on this claim, Plaintiff must establish a prima facie of discrimination. There is no dispute that Plaintiff has satisfied the first and second elements. Thus, our focus will be on the third and fourth prongs of the test.

Defendant contends that Plaintiff cannot make a prima facie case on the third prong because he has not suffered any adverse employment action. The term adverse employment action refers only to those actions that cause "a materially adverse change in the terms or conditions of . . . employment." *Spring v. Sheboygan Sch. Dist.*, 865 F.2d 883, 885 (7th Cir.1989). "A materially

adverse change might be indicated by a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993) (citations omitted). Though the term is interpreted broadly in this circuit, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441-42 (7th Cir.1996) (holding that "negative performance evaluations alone do not constitute an actionable adverse employment action"); *Spring*, 865 F.2d at 886 (holding that reassignment that did not negatively impact responsibilities or salary, was not adverse employment action under ADEA). Furthermore, "a letter of warning is generally considered insufficient to qualify as an adverse employment action." *Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005). However, a suspension and lost wages can be considered an adverse action. *See e.g. Russell v. Bd. of Trs.*, 243 F.3d 336, 341 (7th Cir. 2001) (stating a five-day disciplinary suspension was considered materially adverse because it was a formal disciplinary action and because the employee lost a week's pay.)

In his complaint, Plaintiff identifies the following discipline that was taken against him. This action includes: (1) issuing disciplinary actions as warning letters for attendance problems and suspensions; (2) being given unscheduled or unexcused absences; and (4) withholding pay from Plaintiff for a day that he missed due to inclement weather. (First Amend. Compl. ¶ 6.) However, there is no evidence to suggest that these actions had any tangible, negative impact on Hardy's employment or that Plaintiff's employment was ended as a result of these actions. Such acts did not cost Plaintiff a promotion, a decrease in wages, benefits or material responsibilities, or otherwise adversely affect any term or condition of his job. Although a significant suspension can be

considered materially adverse, Hardy does not allege, much less support with evidence, that the suspensions were unpaid, and in fact states in his deposition that his pay was withheld only when he missed work due to inclement weather and when he overslept a few times. He does not suggest that withholding his pay for these absences was improper. (Def.'s Stmt. of Facts, Ex. A at 53-55.) Absent evidence to establish that Hardy received an adverse employment action, his Title VII claim may not survive. Thus, because Hardy has failed to satisfy the third element of a race discrimination claim, his cause fails.

Hardy's cause also fails because he cannot identify similarly situated employees who were treated more favorably than he. Employees are situated similarly only if they "dealt with the same supervisor, were subject to the same standards, and . . . engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or [defendant's] treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000) (stating that an employee must show that he is similarly situated in performance qualifications and conduct.) To be similarly situated, two employees must be "directly comparable . . . in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). A plaintiff's perceptions of similarities should not be based on his mere perceptions of likeness, but should be fact-specific to show that he is directly comparable to another person. *Essex v. United Parcel Serv.*, 111 F. 3d 1304, 1311 (7th Cir. 1997).

Hardy compares himself to other custodians, mechanics and technicians, some of whom reported to Himes and some of whom reported to Polumbo. Defendant contends that the named individuals did not commit the same infractions with the same frequency as Plaintiff. Nothing in the record shows that Plaintiff engaged in precisely the same conduct as the other named individuals

who were truant. Also, by virtue of their different jobs, the mechanic and technician are not similarly situated because they were not equally qualified, performed different job functions, and had different job responsibilities. Furthermore, one of the custodians with whom Plaintiff compares himself was a group leader, and he, too, may not be considered as similarly situated to Plaintiff.

As to the other custodians, Plaintiff has not pointed to any evidence that shows their conduct, absences, and attendance history were directly comparable to Plaintiff's. There is no proof that their infractions happened as often or that the mitigating circumstances surrounding the other's absences were not compelling to allow the supervisors to exercise their discretion in determining how to categorize the absence. Hardy does not claim to have any knowledge of the actual reasons or circumstances that these other employees offered in explaining their absence. Without such pertinent facts, we may not conclude that the situations were comparable. Also, Defendant points to a Caucasian employee, albeit with a different job title, who was issued a letter of warning and a seven-day suspension for his irregular attendance.

Hardy argues that all of the attendance infractions should be treated the same and that supervisors should not consider extenuating circumstances to assess whether an absence is categorized as scheduled. However, it is not for us to determine in this motion the effectiveness of the postal service's policies and procedures. Further, Plaintiff argues that because Defendant has not proven that there were differences between Plaintiff and the other employees, Defendant has not carried its burden. We disagree. Plaintiff has the burden to establish a prima facie case, which includes demonstrating that he was treated differently than other similarly situated employees.

Plaintiff has offered no evidence to suggest that Defendant treated similarly situated custodians who were inexcusably absent from work the number of times Plaintiff was more

favorably than Hardy. Hardy has made no showing that the non-custodial employees were subject to the same workplace rules or that the custodial employees engaged in the same conduct and had the same conversations with their supervisors as Hardy. Hardy's perceived similarities to the others are general statements that lack the fact-specific examples to allow us to conclude that those individual's were similarly situated. Thus, he has not satisfied the fourth element of his prima facie case of discrimination and his claim fails.

Moreover, although Plaintiff failed to establish a prima facie case and the burden never shifted to Defendant, Defendant does offer a legitimate, non-discriminatory reason for its actions. Specifically, Defendant presents evidence that shows Plaintiff's chronic attendance violations and demonstrates that Defendant's disciplinary actions were predicated on numerous policy infractions. However, we do not reach this issue because Plaintiff has failed to present his prima facie case. Defendant's motion for summary judgment is, therefore, granted.

## Conclusion

For the reasons set forth above, Defendant's motion for summary judgement is granted. This is a final and appealable order.

**ENTER:**

UNITED STATES DISTRICT JUDGE

DATED: AUG 2 2 2005